Elsie S. CRIDER Plaintiff-Respondent,

v.

Frank STEINBERG,
Defendant-Appellant,

and

Greg Steinberg, Christina Steinberg, Kevin Steinberg, Michael Steinberg, and David Steinberg, by Frank Steinberg, their next friend, Intervenor-Defendants, and Third-Party Plaintiffs-Appellants,

v.

UNITED BANK OF UNION, Third Party Defendants-Respondent.

No. 51209.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 16, 1986.

Walter Muarry, Union, for Elsie Crider.

Michael Wayne Brown, Union, for United Bank of Union.

Prudence L. Fink, Union, for Frank Steinberg, et al.

KAROHL, Judge.

This case began when Elsie S. Crider filed a petition to replevin five certificates of deposit issued by United Bank of Union (Bank). Plaintiff claimed ownership of the five certificates of deposit purchased by Ervin Steinberg. Ervin died on December 8, 1983. On that date the certificates were issued in the name of Ervin Steinberg, P.O.D. Elsie S. Crider. After Ervin died, defendant Frank Steinberg, Ervin's son, took charge of the certificates. Five of Ervin's grandchildren, who were the children of Frank, claimed the certificates and were permitted to intervene as defendants and file a counterclaim against plaintiff Crider and a third party claim against United Bank of Union. When Ervin Steinberg purchased each $3,500 certificate of deposit

from the bank on April 18, 1977, they were issued in his name and the name of each one of his grandchildren as a joint tenant with right of survivorship. On November 19, 1982, the bank physically altered each certificate by striking over the name of a grandchild and substituting "P.O.D. Elsie S. Crider". The parties stipulated that Elsie S. Crider did not know the five certificates existed prior to Ervin Steinberg's death. From the date of issue to the date of death, Ervin was in sole possession of the certificates. The trial court found in favor of plaintiff Crider, on her petition and on the counterclaim of intervenors. As a result, the third party claim of intervenors also failed.

On this appeal intervenors claim the certificates of deposit were non-negotiable; that they were materially altered, contrary to § 400.3–407 RSMo 1978 and must be honored by their original terms; that the Bank could not legally make the alterations so as to extinguish a gift; and, that the Bank was bound by contract not to make the changes.

In this court tried case we review according to Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The facts relating to the purchase of the certificates of deposit are not in dispute. Ervin purchased them with his funds and retained possession until his death. Both parties agree that Ervin thereby created a statutory joint tenancy with one of his grandchildren on each certificate. Section 362.470 RSMo 1978; *Pollock v. Brown*, 569 S.W.2d 724, 731 (Mo. banc 1978) (purchase of certificates of deposit from Bank); see *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972) (certificates of deposit purchased from Savings and Loan Associations); *McGee v. St. Francois County Savings and Loan Association*, 559 S.W.2d 184 (Mo. banc 1977); *But see, Melton v. Ensley*, 421 S.W.2d 44, 55 (Mo.App.1967) (certificates of deposit issued by Bank said not to be within the purview of § 362.470 RSMo 1959).

In *Pollock*, the court found a bank's certificate of deposit to be a statutory joint tenancy and recognized, "[h]owever, plaintiff had a right to retain possession of the certificate of deposit which evidenced said account, thereby retaining control over the account by reason of the fact that surrender of the certificate was required for withdrawal of funds from the account" *Pollock* 569 S.W.2d at 731. The court held the purchaser of the certificate of deposit was entitled to replevy the certificate from the joint owner, who had temporary possession by permission, but solely for the purpose of safe keeping and refused to return the certificate on demand. This was found to be a bailment of the certificate. The court found that the joint tenancy created on the authority of § 362.470 is a statutory joint tenancy which recognizes that one party may possess the certificate evidencing the deposit for the purpose of controlling the withdrawal of the funds from the account, thereby effecting a testamentary disposition. *Id.* at 732. The court then recognized that the rule against permitting replevin by one joint tenant against another should not be applied to a situation involving a certificate of deposit because of the statute. *Id.* at 732.

*In re Estate of LaGarce* was decided by our Supreme Court En Banc in 1972. It was cited with approval in *McGee v. St. Francois County Savings and Loan Association*, 559 S.W.2d 184 (Mo. banc 1977), a case involving certificates of deposit issued by a Savings and Loan Association. The facts in *McGee* are similar to our facts. Walter McGee purchased two certificates of deposit jointly with his wife prior to her death. Thereafter, he produced the certificates at the Savings and Loan with a request that his wife's name as joint owner be lined out. On February 11, 1974, he requested the Savings and Loan to add the name Vernell McGee on the face of the certificates as a joint tenant. On March 7, 1974, the Savings and Loan withdrew the name of Vernell McGee on the face of the certificates. After Walter McGee died, Vernell claimed the certificates of deposit from Walter's estate. The court reviewed

§ 369.174 RSMo 1969 which is similar to § 362.470 RSMo 1978. The court recognized that Walter McGee could have surrendered the certificates and received cash or a check. He also could have surrendered the old certificates with a request for replacement certificates issued in his individual name or in his name and the name of some other person. The court held the procedure utilized, alteration on the face of the existing certificates, had the same effect as surrender and reissue. The alteration procedure was regularly employed by the Savings and Loan. That was the form in which Vernell McGee's name was originally added to the certificates. The court concluded and held the procedure utilized accomplished the request of Walter McGee and was permissible and effectively terminated the joint accounts. *McGee*, 559 S.W.2d at 188. The court found that this decision was consistent with the result reached in *Carroll v. Hahn*, 498 S.W.2d 602 (Mo.App.1973). In *Carroll*, this court reviewed a case involving a joint savings account. We relied on *In re Estate of LaGarce*, which recognized a specialized bank account-will by statute and held that under the statute a "statutory testamentary disposition" was created which must be given effect as a result "prior to death it [the statutory testamentary transfer] may be revoked by the depositor who furnished the money during his lifetme." *Carroll*, 498 S.W.2d at 607. The court held that the one who deposited the funds has the power to transfer those funds to a new account so as to divest the interests of a joint tenant. *Id.* at 607.

Intervenors interpose a new argument on the basis of § 400.3–407 RSMo 1978. They argue that this section prohibits an alteration on the face of the certificate. We find this section is not applicable. A material alteration under this section of the Uniform Commercial Code is significant so as not to defeat the rights of a holder in due course of a negotiable instrument, § 400.3–406 RSMo 1978, and a subsequent holder in due course, § 400.3–407(3) RSMo 1978. Such alterations are not material for a party who is not and never was a holder of the instrument and irrelevant where the maker alters at the request and as requested by the holder and where existing rights of third parties are not involved.

Intervenors support this argument by claiming there was no direct evidence that Ervin Steinberg requested the alteration. There was no direct evidence, but there was circumstantial evidence that he did. Ervin maintained sole possession of the certificates. According to the evidence, received without objection, the policy of the bank to make changes was that "[t]he original, the first party on the C.D. would need to be present in order to request a change". The change could not have been made at the request of plaintiff Elsie Crider because she was unaware of the existence of the certificates of deposit. This evidence supported a finding that the alteration was at the request of Ervin Steinberg as the payee and holder of the certificates. The reason the evidence was circumstantial and not direct is that the trial witness who physically made the alterations on the certificates did not deal directly with Ervin Steinberg, but proceeded under the direction of another employee of the bank.

We reject intervenors claims of error that the bank could not legally make the alterations and that the alterations were ineffective. Ervin Steinberg purchased the certificates from his own funds, and retained the certificates. He thereby retained the right to withdraw the funds during his lifetime. The change in ownership by facial alteration of the certificate was available under the policy of the bank only when requested by the original party. Although this procedure invites dispute it was effective for that purpose.

Finally, with due deference to *Pollock, LaGarce* and *McGee*, we reject intervenors argument that general contract law prohibits giving effect to the alterations on the face of the certificates.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and CRANDALL, J., concur.